**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

BRIAN LEE ADAMS,

        Petitioner,

vs.                                        Case No.:    3:17-cv-893-J-34JBT
                                                               3:16-cr-50-J-34JBT

UNITED STATES OF AMERICA,

        Respondent.
_____/

## ORDER

This case is before the Court on Petitioner Brian Lee Adams's pro se Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence (Civ. Doc. 1, § 2255 Motion) and supporting memorandum (Civ. Doc. 1-1, Memorandum).[1] In the Motion, Adams raises four grounds of ineffective assistance of counsel regarding his guilty plea and sentence. The United States filed a response in opposition. (Civ. Doc. 4, Response).[2] Although given the opportunity to file a reply brief (Civ. Docs. 3, 5), Adams did not do so. Thus, the case is ripe for a decision.

Pursuant to 28 U.S.C. § 2255 and Rule 8(a) of the Rules Governing Section 2255 Proceedings[3], the Court has considered the need for an evidentiary hearing and determines that a hearing is not necessary to resolve the merits of this action. See Rosin

---

[1] Citations to the record in the underlying criminal case, United States vs. Brian Lee Adams, No. 3:16-cr-50-J-34JBT, will be denoted "Crim. Doc. __." Citations to the record in the civil § 2255 case, No. 3:17-cv-893-J-34JBT, will be denoted "Civ. Doc. __."
[2] Adams's § 2255 Motion and Memorandum list five grounds, but Ground One merely contains a recitation of the law regarding ineffective assistance of counsel claims.
[3] Rule 8(a) of the Rules Governing Section 2255 Proceedings expressly requires the Court to review the record, including any transcripts and submitted materials, to determine whether an evidentiary hearing is warranted before resolving a § 2255 motion.

1

v. United States, 786 F.3d 873, 877 (11th Cir. 2015) (an evidentiary hearing on a § 2255 motion is not required when the petitioner asserts allegations that are affirmatively contradicted by the record or patently frivolous, or if in assuming the facts that he alleges are true, he still would not be entitled to any relief); Patel v. United States, 252 F. App'x 970, 975 (11th Cir. 2007).[4] For the reasons set forth below, Adams's § 2255 Motion is due to be denied.

### I. Background

On April 15, 2016, a federal grand jury sitting in the Middle District of Florida returned a six-count indictment against Adams. (Crim. Doc. 1, Indictment). Count One charged Adams with bank fraud, in violation of 18 U.S.C. § 1344, based on a scheme to collect and transfer his deceased mother's Anheuser Busch pension benefits from her bank account after she passed away. Count Two charged Adams with stealing, embezzling, or converting United States property, in violation of 18 U.S.C. § 641, based on Adams continuing to collect his mother's social security benefits for a year after she died. Counts Three through Six charged Adams with aggravated identity theft, in violation of 18 U.S.C. § 1028A, for using his mother's identity to collect her pension and/or social security benefits.

On October 31, 2016, Adams pleaded guilty to Counts Two and Three pursuant to a written plea agreement. (Crim. Doc. 25, Plea Agreement; Crim. Doc. 40, Change of Plea Transcript ["Plea Tr."]). In doing so, Adams admitted that upon finding his mother

---

[4] Although the Court does not rely on unpublished opinions as precedent, they may be cited throughout this Order as persuasive authority on a particular point. Rule 32.1 of the Federal Rules of Appellate Procedure expressly permits the Court to cite to unpublished opinions that have been issued on or after January 1, 2007. Fed. R. App. P. 32.1(a).

deceased, he buried her body in the backyard and did not report her death to anyone so that he could continue to collect her social security and pension checks. Plea Agreement at 18; Plea Tr. at 24-25. After conducting a change-of-plea colloquy, the presiding Magistrate Judge reported:

> [a]fter cautioning and examining Defendant under oath concerning each of the subjects mentioned in Rule 11, I determined that the guilty pleas were knowledgeable and voluntary as to each Count, and that the offenses charged are supported by an independent basis in fact containing each of the essential elements of such offenses.

(Crim. Doc. 26, Report and Recommendation Concerning Plea of Guilty). Thus, the Magistrate Judge recommended that the Court accept Adams's pleas of guilty. Id. Without objection, the Court accepted Adams's guilty pleas and adjudicated him guilty on November 18, 2016. (Crim. Doc. 28, Acceptance of Guilty Plea).

According to the final Presentence Investigation Report (Crim. Doc. 32, Final PSR), Adams's advisory sentencing range under the United States Sentencing Guidelines was 37 to 46 months in prison as to Count Two, plus a mandatory consecutive term of two years in prison as to Count Three. Final PSR at ¶ 105. The guidelines range was calculated based on a total offense level of 15 and a Criminal History Category of V. Id. As relevant here, the Probation Officer recommended a 12-level enhancement to Adams's offense level pursuant to U.S.S.G. § 2B1.1(b)(1)(G) based on the intended loss amount. Final PSR at ¶ 32. Although the actual loss was $33,292.36, the Probation Officer calculated the intended loss amount to be $526,532.36. Id. at ¶¶ 24, 32. The Probation Officer explained:

> … The intended loss in this case is $526,532.36, which is determined based on the amount of additional SSA [Social Security Administration] benefits ($2,090 monthly) that would have been deposited into Janelle Yates

> Adams['s] account until April 2035, when she reached age 100[5] (236 additional months). This date represents the earliest date the government reasonably would have detected Adams's crime, but for an individual reporting the crime to law enforcement.

Id. at ¶ 24 (footnote in original but renumbered). This recommendation differed from that in the Initial PSR, where the Probation Officer originally calculated the loss amount based on the actual loss, resulting in a guidelines range of 15 to 21 months' imprisonment as to Count Two. (Crim. Doc. 30, Initial PSR at ¶¶ 32, 104). However, the government objected to using the actual loss amount and persuaded the Probation Officer to recommend using the intended loss amount in the Final PSR. Final PSR Addendum, pp. 27-29; Final PSR at ¶¶ 24, 32.

Adams's federal public defender objected to the use of the intended loss amount, first in written objections to the Probation Officer and then in the Sentencing Memorandum filed with the Court. See Final PSR Addendum, pp. 24, 31; (Crim. Doc. 34, Adams's Sentencing Memorandum at 6-10). Counsel also pressed the objection at the sentencing hearing. (Crim. Doc. 41, Sentencing Transcript at 3-9, 14-16). Ultimately, the Court overruled the objection and adopted the guidelines range set forth in the Final PSR. Id. at 16-19. The Court sentenced Adams to a term of 40 months in prison as to Count Two to be followed by a consecutive term of 24 months in prison as to Count Three, for a total term of imprisonment of 64 months. Id. at 31-32. In explaining the reasons for the sentence, the Court specifically stated that it would have varied upward to impose the same sentence even if the actual loss amount had been used to calculate a lower guidelines range. Id.

---

[5] "The Social Security Administration has a 'Centenarian Project' through which they review the benefits of recipients who reach 100 years of age to ensure that they are in fact still alive and entitled to benefit." PSR at ¶ 24 n.1.

The Court entered judgment on January 31, 2017. (Crim. Doc. 37, Judgment). Adams did not file a notice of appeal. Less than one year after the entry of judgment, Adams timely filed the § 2255 Motion. Broadly speaking, Adams argues that counsel gave ineffective assistance by failing to challenge the loss amount and by misadvising him regarding the decision to plead guilty.

## II.     Discussion

Pursuant to Title 28, United States Code, Section 2255, a person in federal custody may move to vacate, set aside, or correct his sentence. Section 2255 permits collateral relief on four grounds: (1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the court lacked jurisdiction to impose the sentence; (3) the imposed sentence exceeded the maximum authorized by law; and (4) the imposed sentence is otherwise subject to collateral attack. 28 U.S.C § 2255(a) (2008). Only jurisdictional claims, constitutional claims, and claims of error that are so fundamentally defective as to cause a complete miscarriage of justice will warrant relief through collateral attack. United States v. Addonizio, 442 U.S. 178, 184-86 (1979); Spencer v. United States, 773 F.3d 1132, 1138 (11th Cir. 2014) (en banc) ("[A] district court lacks the authority to review the alleged error unless the claimed error constitute[s] a fundamental defect which inherently results in a complete miscarriage of justice." (internal quotation marks omitted)). The Supreme Court has recognized that a petitioner's claim that he received ineffective assistance of counsel in violation of the Sixth Amendment is properly brought in a collateral proceeding under § 2255. Massaro v. United States, 538 U.S. 500, 504 (2003).

To establish ineffective assistance of counsel, a § 2255 petitioner must demonstrate both: (1) that his counsel's conduct amounted to constitutionally deficient performance,

and (2) that counsel's deficient performance prejudiced his defense. Strickland v. Washington, 466 U.S. 668, 687 (1984); Martin v. United States, 949 F.3d 662, 667 (11th Cir. 2020). In determining whether the petitioner has satisfied the first requirement, that counsel performed deficiently, the Court adheres to the standard of reasonably effective assistance. Weeks v. Jones, 26 F.3d 1030, 1036 (11th Cir. 1994) (citing Strickland, 466 U.S. at 688). To prevail, the petitioner must show, in light of all the circumstances, that counsel's performance fell outside the "'wide range of professionally competent assistance.'" Scott v. United States, 890 F.3d 1239, 1258 (11th Cir. 2018) (quoting Payne v. Allen, 539 F.3d 1297, 1315 (11th Cir. 2008)). In other words, "[t]he standard for effective assistance of counsel is reasonableness, not perfection." Brewster v. Hetzel, 913 F.3d 1042, 1056 (11th Cir. 2019) (citing Strickland, 466 U.S. at 687). To satisfy the second requirement, that counsel's deficient performance prejudiced the defense, the petitioner must show a reasonable probability that, but for counsel's error, the result of the proceeding would have been different. Martin, 949 F.3d at 667 (citing Padilla v. Kentucky, 559 U.S. 356, 366 (2010)). In determining whether a petitioner has met the two prongs of deficient performance and prejudice, the Court considers the totality of the evidence. Strickland, 466 U.S. at 695. However, because both prongs are necessary, "there is no reason for a court… to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one." Id. at 697; see also Wellington v. Moore, 314 F.3d 1256, 1261 n.1 (11th Cir. 2002) ("We need not discuss the performance deficiency component of [petitioner's] ineffective assistance claim because failure to satisfy the prejudice component is dispositive.").

### A. Grounds One and Two

In Ground One, Adams provides an overview of the law governing claims alleging ineffective assistance of counsel, but he does not identify any particular deficiency in counsel's representation. § 2255 Motion at 4; Memorandum at 1-7. In Ground Two, however, Adams asserts that "[c]ounsel was ineffective when she failed to argue the loss amount. That error resulted in the movant getting additional prison time." Id. at 7 (capitalization altered). Adams contends that the Court erred by imposing a 12-level guidelines enhancement based on the intended loss amount ($526,532.36) instead of a 4-level enhancement based on the actual loss amount ($33,292.36). See id. at 7-9. Adams concludes that "counsel for the movant failed to do anything about it. No evidence, no testimony, and no rebuttal. This is without a doubt ineffective assistance of counsel and prejudiced the defendant since it resulted in a sentence of at least thirty (30) months longer than he should have received." Id. at 9.

The record affirmatively refutes this claim. Adams's counsel objected to the intended loss amount in both submissions to the Probation Officer and the Court. See Final PSR Addendum, pp. 24, 31; Adams's Sentencing Memorandum at 6-10. Counsel argued that the intended loss amount exaggerated Adams's culpability, and that there was no evidence Adams intended to collect his mother's social security benefits until she would have turned 100 years old. Counsel also asserted that "[a]ny calculation that relies entirely on assumptions and presumptions, when the actual loss amount is both known and calculable, is not supported by the Sentencing Guidelines." Final PSR Addendum, p. 31; Adams's Sentencing Memorandum at 7. At most, counsel suggested, Adams would have

continued to collect his mother's social security benefits until he qualified for his own social security or veteran's benefits at age 65. Id. at 7-8.

At the sentencing hearing, counsel maintained the objection. Sentencing Tr. at 4-9, 14-16. Counsel pressed three arguments: (1) that there was no evidence to support an intended loss amount of over $500,000, id. at 4-6; (2) "that to punish for prospective behavior rather than actual behavior without taking into account all of the different ways in which that intended loss would be significantly decreased" was not supported by the evidence, id. at 6-7; and (3) use of the intended loss amount was neither included nor contemplated by the plea agreement, id. at 7-9. The government countered that Adams admitted he planned to collect his mother's social security benefits for at least another 10 years, which would have yielded a loss amount of $250,800 ($2,090 per month times 120 months). Id. at 11. According to the government, that amount still would have been enough to qualify for the 12-level enhancement, which applies whenever the loss amount is more than $250,000 but less than $550,000. See id.; U.S.S.G. § 2B1.1(b)(1)(G).

The Court overruled counsel's objection to the use of the intended loss amount. Sent. Tr. at 16-18. The Court observed that Adams "went to pretty significant lengths to make sure that nobody knew his mother had passed away for the sole purpose of continuing to get her benefits. And that really is very telling with regard to what his intention was. He intended to make sure he got those benefits." Id. at 17. The Court further noted:

> Mr. Adams told the police that he intended to continue to live off those benefits for ten to 15 years, and everything in his conduct suggests that that's exactly what he would have done if he hadn't been caught.
>
> There is nothing in his conduct … that suggests he would have voluntarily stopped even if he started getting his own benefits.

> … [J]ust taking Mr. Adams at his word that he would have done this for ten to 15 years, and just taking it at the low end of saying that he would have received the benefits if the Social Security Administration hadn't caught him for another 120 months, that would be a loss figure of $250,800, which would put him in Paragraph G of 2B1.1b.

Id. at 17-18. Thus, the Court determined that Adams's guidelines range was properly calculated, id. at 18, and sentenced him to a total of 64 months in prison, id. at 31-32. Nevertheless, the Court noted that it would have imposed the same sentence even if the actual loss amount had been used to calculate a lower guidelines range. Id.

Thus, the record refutes Adams's allegation that counsel did nothing to object to the intended loss amount. Counsel objected to both the use of the intended loss amount as well as the determination of that figure, citing a lack of evidence. To the extent Adams argues that counsel failed to present evidence or testimony to contest the loss amount, he fails to identify what testimony or evidence counsel should have submitted. See Memorandum at 9. Moreover, even if counsel had successfully objected to the intended loss amount, the Court specifically stated that even if the actual loss amount was used to determine the guidelines, the Court would have varied upward to impose the same sentence to reflect the seriousness of Adams's offense conduct and to protect the public. Sentencing Tr. at 31-32. Thus, Adams has also failed to demonstrate prejudice under Strickland. See Osley v. United States, 751 F.3d 1214, 1228 (11th Cir. 2014) (movant was not prejudiced by counsel's failure to object to a guidelines sentencing error where the court stated it would have imposed the same sentence regardless of the error). Therefore, relief on Grounds One and Two is due to be denied.

### B. Ground Three

In Ground Three, Adams asserts that "[c]ounsel was ineffective when she did not give movant an option to plea[d] or go to trial and just pushed forward to have movant plea[d]." Memorandum at 9. Adams suggests that in advising him to plead guilty, counsel assumed he would receive a shorter sentence by doing so. Id. at 10. Adams also suggests that in advising him to plead guilty, counsel failed to consider Adams's age, health, family circumstances, and community ties. Id. Adams likens his case to Lee v. United States, 137 S. Ct. 1958 (2017), where the defendant pleaded guilty to a controlled substance offense after counsel wrongly assured him that he would not be subject to deportation. There, the Supreme Court held that counsel's incorrect advice about the immigration consequences of pleading guilty was prejudicial, even if the defendant's likelihood of prevailing at trial was minimal, because contemporaneous evidence showed that remaining in the country was of utmost importance to the defendant. Id. at 1967-68. Adams concludes that "[l]ike in [Lee], had counsel properly explained the consequences and the potential prison time the movant would have faced, the results may have been different." Memorandum at 13. Adams also asserts that had he gone to trial, the loss amount and "other factors could have been argued and successfully at that." Id.

The Sixth Amendment guarantees a defendant the effective assistance of counsel at "critical stages of a criminal proceeding," including when he decides whether to plead guilty. Lafler v. Cooper, 566 U.S. 156, 165 (2012); Hill v. Lockhart, 474 U.S. 52, 58 (1985). Thus, "[t]he Supreme Court has long recognized that Strickland's two-part inquiry applies to ineffective assistance of counsel [claims] arising out of the plea process." Osley, 751 F.3d at 1222 (citing Hill, 474 U.S. at 57). As with any ineffective assistance claim, a

petitioner who claims ineffective assistance arising out of the plea process must demonstrate both that counsel's performance was deficient and that, but for counsel's deficient performance, there is a reasonable probability the result of the proceeding would have been different. Hill, 474 U.S. at 57 (citing Strickland, 466 U.S. at 687-88, 694). Where a petitioner claims that counsel's deficient performance caused him to plead guilty, prejudice is established if the petitioner "show[s] that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Id. at 59; Lee, 137 S. Ct. at 1965.

In support of Ground Three, Adams contends that counsel failed to "properly explain[ ] the consequences and the potential prison time [Adams] faced," and but for that failure, "the results may have been different." Memorandum at 13. Notably, this allegation falls well short of even suggesting that if he had been aware of the full penalties he faced, Adams would have insisted on going to trial. Id. For this reason alone, his claim would fail. Searcy v. Fla. Dep't of Corr., 485 F. App'x 992, 998 (11th Cir. 2012) (petitioner failed to establish prejudice where he "ma[de] no assertion that there was a reasonable probability that he would not have pled guilty if his counsel had investigated" a potential witness); United States v. Searle, 974 F. Supp. 1433, 1438 (M.D. Fla. 1997) (§ 2255 movant failed to demonstrate prejudice where he did "not claim that he would not have pled guilty and insisted on going to trial had he known that the government bore the burden of proving that he knew that the barrel of his shotgun measured only 12 1/2 inches in length."). Regardless, the record refutes this claim on the merits.

Adams read and signed the Plea Agreement, in which he acknowledged that the cumulative maximum sentence he faced was 12 years in prison, two of which must run

consecutive to any sentence imposed for the charge in Count Two of the Indictment. Plea Agreement at 2. Under a section of the Plea Agreement titled "Sentencing Information," Adams acknowledged that the United States "reserve[d] its right and obligation" to report all information regarding his conduct and character to the Court. Id. at 10. Adams further acknowledged that "the sentence [would] be determined solely by the Court, with the assistance of the United States Probation Office," id. at 11, and that he was aware of the potential penalties, id. at 13.

Adams gave additional assurances under oath during the change-of-plea colloquy. Adams affirmed that he had read and understood the entire Plea Agreement and had reviewed it with his attorney. Plea Tr. at 5-6, 18. After the Magistrate Judge informed Adams about the consequences of pleading guilty, including the waiver of any defenses to the charges and the loss of the right to trial, Adams acknowledged his understanding. Id. at 8-11. Adams also stated that he had discussed the federal sentencing guidelines with his attorney. Id. at 11. The Magistrate Judge explained several aspects of the sentencing process, including that: (1) the Court could not determine the guidelines range until after the Probation Office had completed a PSR; (2) the district judge had the authority "to impose a sentence that is either more severe or less severe than the sentence called for by the guidelines"; (3) the district judge was required to consider the sentencing guidelines along with the sentencing factors under 18 U.S.C. § 3553(a); (4) the guidelines were only advisory, and the district judge had the authority to impose any sentence up to and including the statutory maximum; and (5) the sentence could not be predicted, and if it was different or more severe than any estimate provided by counsel, Adams would still be bound by his guilty plea. Id. at 11-12. Adams stated that he understood all of these

things. Id. at 12. Adams further specifically acknowledged that he faced a cumulative maximum sentence of 12 years in prison and that his attorney had discussed the penalties he faced. Id. at 15-17. He affirmed that he knowingly and voluntarily agreed to plead guilty under the Plea Agreement, and denied that his decision was the product of threats, coercion, or any promises not contained in the Plea Agreement. Id. at 22-23, 29-32. Adams also acknowledged that he did not know what sentence he would receive, and that nobody had promised him a light sentence in exchange for pleading guilty. Id. at 30. Before stating that it was his final desire to enter a guilty plea, Adams stated that he had ample time to discuss the case with his attorney and that he was satisfied with her representation. Id. at 31-32. After this thorough colloquy with Adams in accordance with Rule 11, the Magistrate Judge determined that Adams's decision to plead guilty was knowing and voluntary, a finding to which Adams did not object. Id. at 33.

This record conclusively refutes Adams's allegation that counsel failed to advise him or that he was not fully aware of the penalties or consequences of pleading guilty. Indeed, Adams affirmed under oath that he had read and understood his entire Plea Agreement and that he and his attorney had reviewed the entire Plea Agreement, which set forth the maximum penalties (among other things). Adams also affirmed under oath that counsel had discussed the maximum penalties as well as the federal sentencing guidelines with him.

However, even if such was not the case, Adams chose to plead guilty after acknowledging under oath that he knew the judge could impose a sentence up to and including the cumulative maximum sentence of 12 years in prison. Thus, even if counsel had been deficient in failing to adequately advise Adams of the consequences of a guilty

plea, Adams has failed to show prejudice because he pleaded guilty knowing that he could receive a sentence of up to 12 years, more than double the sentence he received. See e.g., United States v. Wilson, 245 F. App'x 10, 12 (11th Cir. 2007) ("During the plea colloquy, the district court itself explained to Wilson – in detail – the consequences of the plea agreement, range of punishment, and sentencing contingencies before accepting Wilson's guilty plea. Thus, any failure on the part of Wilson's counsel to clearly explain the possible punishment was cured by the district court."); Gambrel v. United States, 2013 WL 3934205 at *11 (S.D. Ga. July 30, 2013) ("So long as the Rule 11 court correctly advises a defendant of the minimum and maximum penalties he faces as a result of pleading guilty, a petitioner fails to establish prejudice by alleging that counsel gave erroneous advice about the sentence he might receive or the possibility for enhancements under the Sentencing Guidelines."); United States v. Shedrick, 493 F.3d 292, 299 (3d Cir. 2007) (affirming denial of § 2255 claim that counsel was ineffective for failing to advise petitioner of "the potential for enhancement or upward departure" where such failure was "corrected by the written plea agreement and the detailed in-court plea colloquy, both of which accurately stated [petitioner's] potential sentence."). Because Adams pleaded guilty after acknowledging under oath that he understood he could be sentenced to up to 12 years in prison, he has failed to show how counsel's failure to adequately advise of the consequences of a guilty plea prejudiced him.

On this record, Adams cannot establish that but for counsel's alleged deficient advice regarding the potential penalties, he would have rejected the Plea Agreement and proceeded to trial. Notably, "[s]olemn declarations in open court," such as the ones Adams made when he acknowledged his understanding of the penalties he faced and pleaded

guilty, "carry a strong presumption of verity." Blackledge v. Allison, 431 U.S. 63, 74 (1977). "[T]he representations of the defendant, his lawyer, and the prosecutor at [a plea] hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings." Id. at 73-74. Given that Adams's statements at the change-of-plea colloquy were made under oath, "he bears a heavy burden to show his statements were false." United States v. Rogers, 848 F.2d 166, 168 (11th Cir. 1988) (per curiam). Adams's self-serving and conclusory allegations to the contrary are insufficient to carry that heavy burden. As the Supreme Court wrote in Lee, "[c]ourts should not upset a plea solely because of post hoc assertions from a defendant about how he would have pleaded but for his attorney's deficiencies. Judges should instead look to contemporaneous evidence to substantiate a defendant's expressed preferences." 137 S. Ct. at 1967.

Adams also suggests that counsel's advice neglected to consider his age, his health, his family circumstances, and his ties to the community. Memorandum at 10. However, these are personal factors that Adams alone was in the best position to weigh and consider. Surely, Adams is just as familiar with his own personal, familial, and social circumstances as his lawyer, if not more so. That Adams knowingly and voluntarily pled guilty reflects that he weighed these considerations before he chose to accept the Plea Agreement.

Adams further contends that counsel's advice that he accept the Plea Agreement was based on a faulty assumption: that if Adams pleaded guilty he would receive a less harsh sentence. Memorandum at 10. Such an assumption was not objectively unreasonable under the facts of this case. The Plea Agreement secured tangible benefits

for Adams. One of those was that the government agreed to dismiss Counts One, Four, Five, and Six of the Indictment. Plea Agreement at 3. Another was that the government agreed to recommend as much as a three-level downward adjustment for acceptance of responsibility under U.S.S.G. §§ 3E1.1(a) and (b). Plea Agreement at 4-5. Adams did in fact receive both of these benefits. See Judgment at 1 (dismissing Counts One, Four, Five, and Six of the Indictment); Final PSR at ¶¶ 38, 39 (reducing Adams's offense level by three levels for acceptance of responsibility). Had Adams rejected the Plea Agreement, proceeded to trial, and been convicted, he would have exposed himself to a higher cumulative maximum sentence and a higher guidelines range. Additionally, according to his Memorandum, Adams appears to believe that had he gone to trial, "the loss amount, as well as other [unspecified] factors could have been argued and successfully at that." Memorandum at 13. However, the loss amount is a sentencing factor under the United States Sentencing Guidelines, which would not have been resolved any differently by going to trial. Moreover, he fails to explain why any outcome would have been different.

Adams compares his case to Lee v. United States, 137 S. Ct. 1958, but the comparison is inapt. In Lee, the government conceded that defense counsel performed deficiently by assuring Lee that pleading guilty would not subject him to deportation, when the opposite was true. See id. at 1964. Contemporaneous evidence showed that avoiding deportation was the determinative issue in Lee's decision whether to accept the plea deal. Id. at 1967-68. Thus, the Supreme Court held that Lee had demonstrated prejudice under Strickland and Hill based on the unique significance to him of avoiding deportation. Id. at 1968-69. Adams's case is quite different for two reasons. First, the record refutes any allegation that Adams's attorney performed deficiently. Second, even if counsel had failed

16

to advise Adams of the penalties associated with his guilty plea, the record shows that Adams knew and understood the potential penalties he faced and still decided to plead guilty. Because Adams has failed to establish either deficient performance or prejudice under Strickland, relief on Ground Three is due to be denied.

### C. Ground Four

In Ground Four, Adams argues that "[c]ounsel was ineffective when she did not dispute the actual loss amount, which in turn resulted in the movant receiving more time." Memorandum at 14. In addition, Adams asserts that the intended loss amount was based on "off the cuff" remarks he made during an interview with the police, when he "kiddingly" said he would have continued to collect his mother's benefits for another 10 to 15 years. Id. Adams contends that counsel was ineffective for not seeking to exclude Adams's statements because he made them without an attorney present. See id. at 15.

The record refutes Adams's claim. To the extent he argues that counsel failed to challenge the actual loss amount, the argument is without merit because his sentence was not based on the actual loss. As discussed in Part II.A, the Court determined Adams's guidelines range based on the intended loss amount rather than the actual loss.

To the extent Adams asserts that counsel should have challenged the use of his "off the cuff" remarks to the police to determine the intended loss amount, he fails to identify any legal basis for doing so. When the police interviewed Adams, he admitted that he intended to collect his mother's social security benefits for another 10 to 15 years. Using the lower figure of 10 years, the government urged and the Court determined that the intended loss amount would have been at least $250,800, which is sufficient to trigger the 12-level enhancement under U.S.S.G. § 2B1.1(b)(1)(G). Sentencing Tr. at 11, 17-18.

Adams acknowledges that the police read him his Miranda rights[6], thus refuting the existence of a Miranda violation. Memorandum at 14. The fact that Adams's interview occurred in the absence of an attorney does not, by itself, establish any illegality.[7] Moreover, even if there had been a Miranda violation, the exclusionary remedy generally does not apply in sentencing proceedings or to the calculation of a defendant's guidelines range. United States v. Lynch, 934 F.2d 1226, 1234-37 (11th Cir. 1991); United States v. Jackson, 713 F. App'x 963, 967-69 (11th Cir. 2017) (concluding that a statement taken in violation of Miranda is properly considered at sentencing if the record shows the statement was voluntary and reliable). On this record, counsel had no legal basis for challenging the use of Adams's statements in calculating the intended loss amount. Because "[a] lawyer cannot be deficient for failing to raise a meritless claim," Freeman v. Att'y General, 536 F.3d 1225, 1233 (11th Cir. 2008), Adams is not entitled to relief on Ground Four.

### D. Ground Five

Finally, in Ground Five, Adams claims that "the cumulative impact of trial counsel's errors … require[s] resentencing and/or an evidentiary hearing." Memorandum at 16. Adams contends that even if counsel's errors, standing alone, were not prejudicial, "the cumulative effect of these errors deprived Adams of the fair and just assistance of counsel." Id.

The Eleventh Circuit recognizes that the "cumulative error doctrine provides that an aggregation of non-reversible errors (i.e., plain errors failing to necessitate reversal and

---

[6] See Miranda v. Arizona, 384 U.S. 436, 444-45 (1966).
[7] Notably, Adams does not allege that he invoked the right to counsel when the police interviewed him. Importantly, in the factual basis of his Plea Agreement, Adams admitted that he gave verbal permission to be interviewed, signed an advice-of-rights form, and waived his rights. See Plea Agreement at 19.

18

harmless errors) can yield a denial of a constitutional right to a fair trial, which calls for reversal." United States v. Baker, 432 F.3d 1189, 1223 (11th Cir. 2005) (quotation omitted), abrogated on other grounds by Davis v. Washington, 547 U.S. 813, 821 (2006). Of course, where there is no error or only a single non-prejudicial error, there can be no cumulative error. United States v. Allen, 269 F.3d 842, 847 (11th Cir. 2001). Because Adams has failed to demonstrate any errors, let alone a single non-prejudicial error, he has no right to relief under the cumulative error doctrine. United States v. Ochoa, 941 F.3d 1074, 1106 (11th Cir. 2019) (citation omitted).

### III. Certificate of Appealability

The undersigned opines that a certificate of appealability is not warranted. This Court should issue a certificate of appealability only if the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Adams "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" Miller-El v. Cockrell, 537 U.S. 322, 335–36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)).

Where a district court has rejected a petitioner's claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the claims debatable or wrong. See Slack, 529 U.S. at 484. However, when the district court has rejected a claim on procedural grounds, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a

constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Id. Upon consideration of the record as a whole, this Court will deny a certificate of appealability.

As such, and in accordance with the Rules Governing Section 2255 Cases in the United States District Courts, it is hereby **ORDERED:**

1. Petitioner Brian Lee Adams's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence (Civ. Doc. 1) is **DENIED**.

2. The Clerk is directed to enter judgment in favor of the United States and against Adams, and close the file.

3. If Adams appeals the denial of the petition, the Court denies a certificate of appealability. Because this Court has determined that a certificate of appealability is not warranted, the Clerk shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.

**DONE AND ORDERED** at Jacksonville, Florida this 10th day of April, 2020.

*Marcia Morales Howard*
MARCIA MORALES HOWARD
United States District Judge

lc 19

Copies:
Counsel of record
Petitioner